**D.    Resulting prejudice**

Finally, the prejudice resulting from trial counsel's combined acts and omissions at the punishment phase is apparent.  The jury heard little in the way of mitigating evidence.  They heard nothing of the tragic circumstances of Mr. Diaz's childhood, as described by his affiants in this Court.  "Had the jury been able to place [Mr. Diaz's] excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance."  *Wiggins,* 123 S. Ct. at 2543.  In addition, trial counsel did little in preparation for the only witnesses they presented, Dr. Pinkerman.  His devastating testimony, which the prosecutor stressed in his closing argument, essentially sealed Mr. Diaz's fate.  Finally, defense counsel's closing argument was less than helpful, as it merely touched on reasons that mitigated against a death sentence and was devoted primarily to repeating the baseless defensive theory that the jury already had rejected.  Had trial counsel not committed these errors, "it is quite likely that it would have affected the sentencing decision of at least one juror."  *Lewis v. Dretke,* 355 F.3d at 369.

**V.    The Trial Court Denied Mr. Diaz a Fair Punishment
Hearing by Admitting Evidence That He Was a Gang Member.**

In *Dawson v. Delaware,* 503 U.S. 159 (1992), the Supreme Court held that a capital murder defendant's First Amendment rights were violated by the admission of evidence at the punishment phase that he was the member of the Aryan Brotherhood prison gang "because the evidence proved nothing more than Dawson's abstract beliefs."  *Id.* at 167.  "Because the prosecution did not prove that the Aryan Brotherhood had committed any

41

unlawful or violent acts, or had even endorsed such acts, the Aryan Brotherhood evidence . . . was not relevant to help prove any aggravated circumstance." *Id.* at 166. The gang membership evidence violated the First Amendment, which "prevents [the states] from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." *Id.* at 168.

That is precisely what took place at Mr. Diaz's trial. The evidence that he belonged to the Pistoleros was offered in the State's case in chief on punishment and not in response to any evidence proffered by the defense. *See Dawson,* 503 U.S. at 167 (gang membership evidence was not "relevant to rebut any mitigating evidence offered by Dawson"). Further, as in *Dawson,* the prosecution offered no evidence whatsoever regarding the Pistoleros's belief and practices or that they "had committed any unlawful or violent acts." *Id.* at 166. *See also Anderson v. State,* 901 S.W.2d 946, 950 (Tex. Crim. App. 1995) ("For the jury to assess a defendant's character based on his gang membership, not only should the jury know of the defendant's gang membership, but also of the activities and purposes of the gang to which he belongs"). As defense counsel noted in his final argument, "[t]here was no evidence that these, 'Los Pistoleros', were out there committing murders, committing crimes, nothing. All they showed you was that he was a member of 'Los Pistoleros'." 38 RR 49. Finally, the evidence at Mr. Diaz's trial, like that in *Dawson,* "was not tied in any way to the murder of [his] victim." 503 U.S. at 166.

Not all evidence that implicates First Amendment rights in barred by *Dawson.* For

instance, evidence of a defendant's obsession with sex is admissible when it is shown that "his sexual expression has a violent component" and he "was convicted for a murder which had a sexual component." *Boyle v. Johnson,* 93 F.3d 180, 184 (5th Cir. 1996). Likewise, gang membership evidence is admissible as relevant to future dangerousness when it is shown that the gang "had committed unlawful or violent acts, including homicides, multiple stabbings, drug dealing, and aggravated assaults," *Fuller v. Johnson,* 114 F.3d 491, 498 (5th Cir. 1997), or when it is related to the defendant's "involvement with other group members who were heavily armed and who assisted in the commission of [the defendant's] offense of conviction." *Miller-El Johnson,* 261 F.3d 445, 455 (5th Cir. 2001), *rev'd on other grounds, Miller-El v. Cockrell,* 537 U.S. 322 (2003). *See also United States v. Tampico,* 297 F.3d 396, 403 (5th Cir. 2002) (defendant's membership in NAMBLA, an organization known to promote adult-child sexual relations, was relevant to his intentions or conduct because it "may indicate the increased likelihood of recidivism or a lack of recognition of the gravity of the wrong").

Plainly, none of these exceptions applies to Mr. Diaz's case. As noted above, the capital murder for which Mr. Diaz was on trial was not gang-related, the evidence about the Pistoleros was not offered in rebuttal to any defense evidence, and their was no evidence introduced about the Pistoleros's alleged beliefs and practices. The evidence was, in short, inadmissible because it was not relevant to any issue that the jury was to decide in assessing punishment.

43

Finally, admission of this evidence resulted in prejudice sufficient to warrant a new punishment hearing. Improperly admitted gang membership evidence may be harmless, for instance, when it consists of nothing more than "two improper questions and display of [a] booklet [on gangs]'s cover . . . ." *Wainwright v. Lockhart,* 80 F.3d 1226, 1234 (8th Cir. 1996). Here, by contrast, the punishment phase of Mr. Diaz's trial was permeated with references to the Pistoleros, including in the prosecutor's closing argument. 38 RR 58.

## VI.    Mr. Diaz's Right To Remain Silent Was Violated.

In addition to the errors described above, the fairness of Mr. Diaz's sentencing proceeding was further diminished when the prosecutor impermissibly elicited testimony that infringed on his right to remain silent. On cross-examination, Dr. Pinkerman testified that Mr. Diaz had refused to discuss the facts of the offense based on his attorneys's advice. 37 RR 155. This testimony violated the rule of *Doyle v. Ohio,* 426 U.S. 610 (1976), which forbids comment on a defendant's post-arrest silence to rebut the defendant's exculpatory story. *United States v. Garcia-Flores,* 246, 451, 457 (5th Cir. 2001).

"As a general rule, the government may not 'impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Mirnada* warnings at the time of his arrest.'" *United States v. Rodriguez,* 260 F.3d 416, 420 (quoting *Doyle,* 426 U.S. at 611). "In assessing an alleged *Doyle* violation, the question is whether the disputed statement so infected the trial and sentencing with unfairness that the ultimate conviction and sentence constituted a denial of

44

due process." *Gaskins v. McKellar,* 916 F.2d 941, 951 (4th Cir. 1990).

Here, the punishment phase of Mr. Diaz's trial was rendered unfair by the *Doyle* violation. The facts of this case do not represent a paradigmatic *Doyle* violation in that Mr. Diaz did not testify. Nonetheless, his "exculpatory story" was infringed on in two ways. First, to the extent the defense relied on residual doubt at the punishment phase, their efforts were compromised by this impermissible allusion–and the negative inferences the jury was likely to draw from it–to his exercise of his constitutionally protected right to remain silent. Second, to the extent that the defense relied on Dr. Pinkerman's testimony to argue against a death sentence, his credibility was called into question as being based on less than complete information from the defense. Given this record, the resulting prejudice to Mr. Diaz is apparent.

Although not commenting directly on Mr. Diaz's silence, the prosecutor nonetheless made this point in closing: "The defendant that the doctor says exaggerated, and is malingering and faking mental illness." 38 RR 59. This compounded the *Doyle* violation, because even when post-arrest silence is properly used for impeachment, "the government may not then argue that the defendant's silence was inconsistent with his claim of innocence." *United States v. Rodriguez,* 260 F.3d at 421 (citing *United States v. Shue,* 766 F.2d 1122, 1130 (7th Cir. 1985)).

**VII.  Appellate Counsel Rendered Ineffective Assistance in
Not Raising an Issue of Improper Prosecutorial Argument.**

It is settled under both federal and state law that a prosecutor's "statements appealing

to community expectations" are "objectionable." *Harris v. Cockrell,* 313 F.3d 238, 245 n.13

(5th Cir. 2002).  Thus, it is improper for the State to argue that the community expects or

demands a particular sentence or punishment.  *Borjan v. State,* 787 S.W.2d 53, 56 (Tex.

Crim. App. 1990).  It likewise is settled as a matter of Texas appellate law that error is

preserved for appeal when a defendant's objection is sustained and the jury is instructed to

disregard, but the trial court refuses to grant a mistrial. *Turner v. State,* 805 S.W.2d 423, 430

(Tex. Crim. App. 1991).

Here, both of these requirements were met.  The prosecutor's argument plainly

constituted an impermissible appeal to community sentiment, and thus this is not a case in

which appellate counsel's pretermission can be excused because the omitted ground was

meritless. *See, e.g., Griffin v. Delo,* 33 F.3d 895, 903 (8th Cir. 1994) (appellate counsel not

"deficient in failing to raise and brief the prosecutor's alleged references to Griffin's failure

to testify" because ""[n]o reasonable juror would conclude that the prosecutor's closing

argument made reference to petitioner's failure to take the stand').  Moreover, the error was

preserved for appellate review because the trial court overruled Mr. Diaz's motion for

mistrial.  There was, in short, no impediment to appellate counsel's raising an issue of

improper prosecutorial argument.  His failure to do so constituted deficient performance, and

the resulting, obvious prejudice to Mr. Diaz was of constitutional magnitude.

46

## CONCLUSION

For the above reasons, Petitioner requests that this Court

1.    Grant discovery and expansion of the record as necessary;

2.    Conduct an evidentiary hearing; and

3.    Grant a writ of habeas corpus and order his release from confinement
      unless the State of Texas affords him a new trial or a new punishment
      hearing within a reasonable period of time.

Respectfully submitted,

CHARLES A. PALMER
Texas Bar No. 15426500
Southern District No. 1523

JAMES M. TERRY, JR.
Texas Bar No. 24005119
Southern District No. 23811

5900 Balcones – Suite 210
Austin, Texas 78731
Telephone 512.458.3100
Facsimile 512.458.3119
charles.palmer@sbcglobal.net
jim.terry@direcway.com

ATTORNEYS FOR PETITIONER

47

## CERTIFICATE OF SERVICE

I, Charles A. Palmer, do hereby certify that a true and correct copy of the foregoing First Amended Petition for Writ of Habeas Corpus  has been served by placing it in the United States Mail, postage prepaid, on this the _6 th_ day of December, 2004, addressed to Ms. Carla E. Eldred, Assistant Attorney General, Postconviction Litigation Division, P. O. Box 12548, Capitol Station, Austin, Texas 78711-2548.

CHARLES A. PALMER